IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER MILTON,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **SECURITAS SECURITY SERVICES USA, INC.,** | : | **NO. 24-293** |
| | : | |
| | : | |
| Defendant. | : | |

**Perez, J.**                                                                                                                                                April 24, 2025

## MEMORANDUM

Plaintiff Christopher Milton ("Plaintiff") commenced this action against Defendant Securitas Security Services USA, Inc. ("Defendant"), alleging that Defendant engaged in age and gender discrimination in violation of Title VII of the Civil Rights Act, the Pennsylvania Human Relations Act, and the Age Discrimination in Employment Act of 1967. Defendant now moves for summary judgment. For the reasons that follow, the Court will grant Defendant's motion.

**I.    BACKGROUND**

Plaintiff is a white male over the age of forty who Defendant employed as a shift supervisor. SOF ¶ 1. Plaintiff was assigned to work the night shift at AugustaWestland (a/k/a Leonardo Helicopter), a client that contracted with Defendant for security services. *Id.* ¶¶ 1-2. On September 27, 2021, Plaintiff informed the daytime shift supervisor, Alyssa Toro, that he would issue her a discipline for being tardy. *Id.* ¶ 4. This conversation resulted in an altercation between Plaintiff and Ms. Toro, with Ms. Toro allegedly threatening Plaintiff if he did not "[g]et out of [her] . . . space." *Id.* ¶ 7. Plaintiff reported the incident to Kathryn Jeanes, Defendant's Human Resources Manager, who investigated the incident. *Id.* ¶ 10. During the investigation, Ms. Jeanes spoke with Plaintiff, Ms. Toro, and another employee who witnessed the incident. *Id.* ¶ 9. On September 28, 2021, Plaintiff and Ms. Toro were issued disciplines for their conduct. *Id.* ¶ 11.

On September 29, 2021, Plaintiff emailed his direct supervisor and requested that Ms. Toro and another employee be issued disciplines for attendance-related issues. *Id.* ¶ 14. The next day, on September 30, 2024, Security Officer Corey Filmore and Ms. Toro noticed a mobile phone was left unattended in "record mode." *Id.* ¶ 15. Defendant has a policy prohibiting unauthorized recordings at client sites. *Id.* Ms. Toro reported the incident to another employee, Shaun Colbert, who then contacted Human Resources. *Id.* ¶ 16.

Ms. Jeanes initiated an investigation into the matter, which included speaking to Mr. Filmore and Plaintiff. *Id.* Mr. Filmore informed Ms. Jeanes that neither he nor Ms. Toro knew who the phone belonged to until Plaintiff entered the area, took the phone, and walked away with it. *Id.* Ms. Jeanes testified that, when speaking with Plaintiff about the situation, he first told her that he made the "recording to protect himself because he felt [Ms. Toro] was lying about him." *Id.* Upon further questioning, he stated that he never recorded anything. *Id.* At that point in the conversation, Ms. Jeanes informed Plaintiff that he was going to be terminated for recording at the client site. *Id.* Ms. Jeanes reviewed her investigation findings with two colleagues who agreed that recording the site and other employees was grounds for termination. *Id.*

Plaintiff maintains that he did not make a video recording. *Id.* ¶ 20. On January 22, 2024, Plaintiff brought an action in this Court against Defendant, alleging age and gender discrimination. During her deposition, Ms. Jeanes testified that she is aware of at least fifteen other employees who were terminated for violating the same recording policy, most of whom were women and under the age of forty. SOF ¶ 21.

II.     **LEGAL STANDARD**

Summary judgment is warranted where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party fails to make a showing sufficient to establish an element essential to its case, and on which it

bears the burden of proof at trial, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the . . . party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A primary purpose of summary judgment is to eliminate factually unsupported claims or defenses. *Id.* 323–24.

### III.  DISCUSSION

Where a plaintiff lacks direct evidence of discrimination, the Court's analysis is governed by the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If he succeeds, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the employer successfully makes such an offering, the burden returns to the plaintiff to show that the employer's reason for the adverse employment action is merely a pretext for discrimination. *Id.* at 804.

To establish a prima facie case of age discrimination, a plaintiff must show that "(1) []he is forty years of age or older; (2) the defendant took an adverse employment action against [him]; (3) []he was qualified for the position; and (4) []he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Similarly, to establish a prima facie case of gender discrimination, a plaintiff must prove that "(1) []he was a member of a protected class; (2) []he was qualified for the position; (3) []he suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." *Id.* Here, only the fourth element of each claim is in dispute.

Satisfying the fourth element requires a plaintiff to "(1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b)

were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Green v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014). "Employees are similarly situated when they have similar responsibilities and are held to similar standards . . . [and] when their conduct on the job—or misconduct—is similar in nature." *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.,* 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010). When claiming that another employee was treated differently following misconduct, "a plaintiff must show that the other employee's acts were of comparable seriousness to his own infraction." *Collins v. Kimberly-Clark Pennsylvania, LLC,* 247 F. Supp. 3d 571, 590 (E.D. Pa. 2017) (internal quotation marks omitted). Plaintiff cannot make such a showing.

Plaintiff was terminated after an investigation determined that he had made a video recording at a client site in violation of company policy. SOF ¶¶ 18–19. It is undisputed that Ms. Jeanes is aware of at least fifteen employees who were also terminated for violating this policy. *Id.* ¶ 21. Those employees were mostly women and under the age of forty. *Id.* Plaintiff has not identified similarly situated employees outside his protected class who were treated more favorably than he was with respect to the recording policy. Nevertheless, Plaintiff argues dismissal would be inappropriate because the parties dispute whether he made the recording. I disagree.

On summary judgment, "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Carroll v. Guardant Health, Inc.*, 511 F. Supp. 3d 623, 655 (E.D. Pa. 2021). Thus, the issue is not whether Plaintiff actually made the recording; instead, it is whether Defendant believed he did. *See id.* Plaintiff has not presented "evidence that [Defendant] did not have an honest belief that [he] engaged in misconduct justifying termination." *Id.* Rather, the record shows that after

receiving the initial complaint, Ms. Jeanes spoke with Mr. Filmore, who confirmed he witnessed the recording. SOF ¶ 16. Ms. Jeanes also spoke with Plaintiff. *Id.* According to Ms. Jeanes, Plaintiff first stated that he "started recording to protect himself because he felt [Ms. Toro] was lying about him." *Id.* He later contradicted this statement, claiming he never recorded anything. *Id.* Ms. Jeanes reviewed her findings with two other colleagues, and all three agreed Plaintiff engaged in a terminable offense. *Id.* The evidence shows that Defendant had reason to believe that Plaintiff violated the recording policy. In contrast, there is no evidence that Defendant terminated Plaintiff due to gender or age bias—again, younger employees and female employees were also terminated for violating the recording policy. *Id.* ¶ 21.

In an attempt to show similarly situated employees being treated more favorably, Plaintiff points to instances where younger employees and female employees were not terminated for tardiness or other attendance issues. However, "purported comparators must have committed offenses of 'comparable seriousness.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). In *Opsatnik*, the Court distinguished "a non-operational violation concerning absenteeism" from "an operational violation such as speeding," noting that the two are not of comparable seriousness, especially where the employee was speeding in a railroad car carrying hazardous materials. *Id.* Here, a non-operational violation like tardiness is not of comparable seriousness to an operational violation like recording on a personal device while at a client site, especially where Defendant's company was specifically hired to provide on-site security services. *See* SOF ¶ 1. The incomparability of these policy violations is underscored in how Defendant has disciplined violators—at least fifteen employees were terminated for violating the recording policy whereas there is no evidence of employees being terminated for tardiness. *See id.* ¶¶ 21–24.

Additionally, and perhaps more importantly, just like his younger and female counterparts, Plaintiff was never disciplined or terminated for tardiness or attendance issues. *Id.* ¶ 24. And following the altercation between Plaintiff and Ms. Toro, both individuals were issued written disciplines. *Id.* ¶ 11. An inference of discrimination cannot be shown where a Plaintiff identifies only similarly situated individuals outside of his protected class who engaged in the same conduct and were treated *similarly*. *Peake v. Pennsylvania State Police*, 644 F. App'x 148, 151 (3d Cir. 2016). Plaintiff has not shown that similarly situated employees who were not members of his protected class were treated more favorably, nor has he presented circumstantial evidence that otherwise shows a causal nexus between his age and gender and the adverse employment action. As a result, Plaintiff has failed to set forth a prima facie case of age or gender discrimination.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment. An appropriate order follows.